# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Reid Cuchna ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 CV 50074 |
| ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Reid Cuchna alleges that he began experiencing anxiety attacks in 1998 in connection with a heart problem causing a rapid heart rate. He was then 22 years old. The heart problem was resolved, but plaintiff continued to have anxiety episodes, and in the spring of 1999, began drinking to alleviate the anxiety. Over the next decade or more, plaintiff continued to struggle with these two problems (anxiety and alcohol). The anxiety made it difficult to concentrate and to do activities such as going to movies, crossing bridges, or riding on public transportation. He abused alcohol during much of this time, and sometimes went on drinking binges where he would consume a case of beer a day. His drinking led to the partial amputation of his right foot in 2011 when he passed out in the cold and suffered frostbite. Over this long period, plaintiff has gone to the hospital and treatment facilities and AA meetings "over and over again." Dkt. #12 at 2. He was also homeless for much of the time. He has not worked any sustained job. His two main accomplishments for the last 15 years have been writing several self-published novels and volunteering a few times a week in 2013 at the Vet Center in Rockford. More recently, plaintiff has taken what seem to be some modest steps toward improvement. In

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

1

July 2015, he stopped drinking. He has engaged in more consistent therapy at Rosecrance, going three times a week, for three hours a day, to address his substance abuse and mental illness. He has made a commitment to a year-long counseling program at Rosecrance, and he is no longer homeless.

In May 2013, he filed an application for supplemental security income. Plaintiff was then 37 years old. He alleged that he was disabled primarily because of the "crippling anxiety," but also because of ongoing foot pain caused by the partial amputation. Plaintiff's main evidence for why he cannot work full-time is his long history of breakdowns and unsuccessful treatment. Another key piece of evidence is a letter from Dr. Jafry, his psychiatrist, who opined that the "pervasive and chronic natures of [plaintiff's] symptoms prevent him from working." R. 1561.

An administrative law judge ("ALJ") found plaintiff was not disabled. The ALJ concluded that plaintiff's ability to engage in various activities (most notably, writing four novels) showed that he could work full-time. The ALJ gave no weight to Dr. Jafry's opinion because, among other things, she did not refer to plaintiff's alcohol problem in the letter. The ALJ limited plaintiff to a sedentary job to account for his foot pain.[2]

In this appeal, plaintiff raises a number of interrelated arguments. Plaintiff argues that the ALJ failed to apply the checklist under the treating physician rule in rejecting Dr. Jafry's opinion, as well as the opinion of Dr. Basil Jaradah, who opined that plaintiff would "need to elevate his right foot due to amputation." R. 1560. Plaintiff also argues that a Sentence 6 remand is appropriate because the Appeals Council supposedly failed to consider new and material

---

[2] The ALJ's decision contains other rationales and more detail.

evidence.[3] There are other arguments as well. The Court need not consider all of these arguments because one issue stands out as being unresolved.

The issue is the ALJ's handling of plaintiff's alcohol problem. By statute, a claimant cannot be found disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). An ALJ must determine whether the claimant would still be found disabled "if he or she stopped using drugs or alcohol." SSR 13-2p; *see also Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006) ("When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled"). SSR 13-2p further states that the best way to answer this question is to look for a "period of abstinence" and then ask whether the symptoms improved during that period such that the claimant would no longer be considered disabled. If so, then alcohol was a material factor.

Here, the parties agree that the ALJ did not explicitly conduct this materiality analysis. Plaintiff argues, however, that the ALJ implicitly used his alcohol problem as a way to avoid addressing key evidence. The Government interprets the ALJ's decision differently. The Government believes that the ALJ purposefully avoiding doing a materiality analysis because the ALJ concluded (without explicitly stating so) that plaintiff would not qualify as disabled *even if* alcohol were a material contributing factor. In other words, the ALJ gave plaintiff the benefit of the doubt on this issue, and did not reach any conclusions about the role alcohol abuse may have played in plaintiff's problems.

---

[3] This evidence consists of an October 2016 opinion letter from Dr. Norem, a podiatrist, and letters from plaintiff's father and friends.

3

After reading the ALJ's decision carefully, the Court finds that plaintiff's argument is more persuasive. As explained below, in multiple places, the ALJ cited to the alcohol problem in a way to suggest that it was the hidden rationale doing most of the heavy analytical lifting. In short, contrary to the Government's argument, the ALJ did engage in a *de facto* materiality analysis. This conclusion is evidenced, first of all, by the following passage from the decision:

> Concerning the claimant's psychological functioning, the record reveal[s] that the claimant received treatment for anxiety and bipolar disorder during the period in question. However, these records indicate that the claimant was abusing alcohol during a substantial portion of this period.

R. 23. Although the ALJ does not explicitly state that she is conducting a materiality analysis here, the word "however" suggests that she was, in fact, doing so. The first sentence refers generically to plaintiff's treatment "during the period in question." But this brief and bland statement covers a large swath of the medical record. More pointedly, this statement summarily dismisses, in one fell swoop, the ten-year-plus period of hospitalizations, breakdowns, in-patient stays, crises, and relapses. Notably, the ALJ never summarized this evidence anywhere in the decision. For example, despite plaintiff having gone to the hospital numerous times, the ALJ never used the word "hospital," or any of its cognates, in the decision. The ALJ also did not summarize plaintiff's lengthy counseling efforts (he had been going to Rosecrance, with some breaks, since 2006). In contrast, most ALJ decisions contain a long narrative section detailing the medical visits and treatment history. Here there is no such narrative. As a result, a person reading only this decision would have little sense of the long-term and arguably severe nature of the problem.[4] In sum, the ALJ ignored a major line of evidence—essentially the backbone of

---

[4] This evidence is extensive, but it need not be summarized in detail here. Plaintiff's opening brief contains four pages listing the various breakdowns. Some of the episodes appear to be one-day visits to the hospitals, but others were extended stays. For example, plaintiff was hospitalized for nine days in January 2013, which was then followed by 13 days at a Rosecrance crisis unit. Dkt. #12 at 3. It is true that there are gaps when there were no episodes, but there are also more intense periods. For example, plaintiff's brief contains the following description of

4

plaintiff's case—on the ground that it was all alcohol related. This suggests that the ALJ was implicitly (or perhaps even explicitly) conducting a materiality analysis.[5]

There are other places in the decision where the alcohol problem was mentioned and likely affected the analysis. One is the evaluation of episodes of decompensation as part of the Section 12 listing analysis. The ALJ concluded that plaintiff had no episodes of decompensation because there was "no indication that [plaintiff] experienced an episode that lasted two weeks and was unrelated to alcohol abuse." R. 20. The latter requirement—that any episode must be unrelated to alcohol abuse—is further evidence that the ALJ was engaged in a *de facto* materiality analysis. In finding no episodes of decompensation, the ALJ did not even discuss the possibility that some of plaintiff's breakdowns and extended hospital stays might qualify.[6] At a minimum, these episodes would seem to call for *some* explanation for why they did not qualify. The fact that the ALJ provided no such analysis suggests that she was using the alcohol abuse as a blanket rationale to avoid any deeper analysis.[7]

A third area where the ALJ raised this issue was when she criticized Dr. Jafry's opinion letter because it failed to mention the alcohol problem and only referred to bipolar disorder and generalized anxiety. Although the ALJ's reasoning here is not entirely clear, it appears that the

---

some of the hospital visits: "The claimant sought emergency care at Swedish American Hospital on 5/24/12, 8/1/12, 01/24/13-01/31/13, 4/12/13. He also sought emergency care at Rockford Memorial Hospital on 9/04/12-09/11/12, 9/20/12, 10/5/12, 10/8/12." Dkt. #12 at 3 (citations and footnotes omitted).

[5] Alternatively, if the ALJ were not implicitly conducting a material analysis, as the Government argues, then the case still should be remanded because the ALJ would have violated the more basic principle that an ALJ must consider all lines of contrary evidence. *See Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

[6] At the administrative hearing, the medical expert, Dr. Heinemann, was asked about the many hospitalizations, and he stated that they "always seemed to be alcohol-related." R. 74.

[7] The ALJ's other rationale—that any episode must last at least two weeks—is likewise flawed. First, as a factual matter, it is not clear that some of the episodes, such as the nine day hospital stay followed by the 13-day stay at a Rosecrance crisis unit, did not meet the two-week standard. In any event, the Seventh Circuit has explained that there are several different types of episodes that might qualify as an episode of decompensation. *Larsen v. Astrue*, 615 F.3d 744 (7th Cir. 2010). One is a series of "more frequent episodes of shorter duration." *Id.* at 751. The ALJ did not consider this alternative definition when applying the strict two-week durational requirement.

ALJ believed that the alcoholism was an important factor that should have been considered by Dr. Jafry. The alcohol problem, again, affected the analysis.

The fourth area was in the discussion of Dr. Langgut's consultative examination. In this section, the ALJ noted generally that plaintiff had been "abusing alcohol during a substantial portion" of the time but then stated, somewhat vaguely, that there were a "few periods" where he was sober. R. 23. The only period mentioned was the day of the Langgut examination. The ALJ noted that plaintiff, while apparently sober, was still able to "perform simple calculations and repeat a string of seven digits forward and backward with minimal error." *Id.* Therefore, according to the ALJ, this showed that it was the alcohol, and not the anxiety, that was the primary cause of plaintiff's problems over the years. Putting aside whether this type of one-shot example is sufficient, the ALJ here was at least loosely following the approach, advocated by SSR 13-2p, of finding baseline periods of sobriety to separate out the effects of the alcohol from the mental illness. The ALJ's brief deployment of this methodology is again consistent with plaintiff's thesis that the ALJ was conducting materiality analysis.

In sum, the Court agrees with plaintiff that the ALJ relied on the alcohol abuse to discount evidence in plaintiff's favor. A natural follow-up question is whether this implicit analysis was sufficient. The Government has not made such an argument, but even if it did, the Court finds that the ALJ's analysis was too conclusory and cryptic.

For one thing, as noted above, the ALJ never recounted the large amount of evidence about plaintiff's many breakdowns over a decade, making it unclear whether the ALJ fully appreciated the extent, nature, and frequency of these breakdowns. The ALJ's vague reference to a "few periods" of sobriety is likewise insufficient because the ALJ provided no details, other than referring to the one 40-minute Langgut examination. Therefore, neither this Court nor

plaintiff can verify what the specific time periods the ALJ was referring to, and so cannot assess whether the evidence truly supports the ALJ's assertion.

Another issue not addressed is the possibility that plaintiff's alcohol abuse was caused by the underlying mental illness. Plaintiff states that he began abusing alcohol only after the intense anxiety surfaced and that he was trying to self-medicate.[8] The Seventh Circuit has faulted ALJs for not considering this very scenario. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms"); *Harlin v. Astrue*, 424 Fed. App. 564, 568 (7th Cir. 20100) ("we believe that the ALJ here has not adequately disentangled the effects of Harlin's drug abuse from those of her other impairments."). Here the ALJ also made no serious attempt to disentangle the effects the alcohol abuse and the anxiety other than the one brief analysis regarding the Langgut examination. The Court recognizes that this analysis is often not an easy task, but the ALJ still must make some effort to confront the issue head-on. The medical expert could also help address this issue.

On remand, the ALJ should consider these issues more explicitly and should consider the specific evidence about plaintiff's breakdowns. It may be that, after a more complete and explicit analysis, the ALJ's implicit materiality analysis still holds up as a viable rationale. The Court notes that plaintiff's most recent history includes a period of sobriety and that plaintiff stated that he was doing somewhat better, although he still reported experiencing anxiety symptoms. However, to be a part of a sustainable rationale, this seeming improvement would need to be investigated more carefully and then combined with other evidence.

---

[8] When plaintiff testified at the hearing that he was self-medicating, the ALJ disagreed with this characterization, stating as follows: "I do not like that term self-medicating. If you're being prescribe medication, you're not self-medicating. You're abusing alcohol is what you're doing." R. 56. Plaintiff answered that he used that phrase because it was "what [he had] been told from professionals." *Id.*

Having concluded that a remand is required, the Court will not address all of plaintiff's remaining arguments. But a few brief observations can be offered. First, in rejecting the opinions from plaintiff's treating physicians, the ALJ did not follow the procedures set forth in the treating physician rule. The ALJ should explicitly apply the checklist on remand. *See Duran v. Colvin*, 2015 U.S. Dist. LEXIS 101352, *8-9 (N.D. Ill. Aug. 4, 2015). Second, in the credibility analysis, the ALJ noted that plaintiff had never worked a full-time job on a consistent basis in the period before his onset date, thus suggesting that it was not his mental illness but a general aversion to work that explained his failure to hold a job. But this argument unfairly suggests that plaintiff's mental illness began on his disability onset date of May 2013 when the evidence is clear and undisputed that it started fifteen years earlier and has thus been present during his entire adult working life. Third, the ALJ placed much emphasis on the fact that plaintiff wrote four or five novels through a website service. But the ALJ did not give any consideration to plaintiff's explanation that he wrote these novels as a "kind of outlet" for his anxiety and that he did so on his own schedule for about ten hours a week. R. 42. As the Seventh Circuit has noted, it is a much different task to work consistently for a 40-hour week as opposed to doing more sporadic activities that can be flexibly scheduled around good periods. *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004) ("Carradine does not claim to be in wracking pain every minute of the day. When she feels better for a little while, she can drive, shop, do housework.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date:  June 25, 2018                               By:  _____
                                                        Iain D. Johnston
                                                        United States Magistrate Judge